### In re R.H. MACY & CO., INC., et al., Debtors.

**Wongco, a partnership, Appellant,**

v.

**Federated Department Stores, Inc., f/k/a R.H. Macy & Co., Inc., and Macy's Primary Real Estate, Inc., Appellees.**

**No. 00 Civ. 5067 (BSJ).**

United States District Court, S.D. New York.

Aug. 20, 2002.

141

Ronald S. Beacher, Oppenheimer, Wolff & Donnelly, New York City, Eric A. Nyberg, Kornfeld, Paul, Bupp & Nyberg, PC, Oakland, CA, for Wongco.

Cindy E. Tzerman, Megyn M. Kelly, Jones, Day, Reavis & Pogue, New York City, for Federated Department Stores.

## DECISION & ORDER

JONES, District Judge.

## I. BACKGROUND

Appellees are successors in interest to R.H. Macy & Co., Inc. ("Macy's"), which, together with numerous related entities, (collectively, the "Debtors") commenced proceedings under Chapter 11 of the Bankruptcy Code in January 1992. Those proceedings were successfully concluded on December 8, 1994, with the entry of an order (the "Confirmation Order") confirming the Debtors' Second Amended Joint Plan of Reorganization (the "Plan" or "Reorganization Plan"). Appellant is the lessor of certain retail space leased to Macy's in San Francisco, California.

Appellees commenced this adversary proceeding in September of 1998 by filing a complaint (the "Macy's Complaint") seeking to permanently enjoin Appellant Wongco from pursuing an action filed against Appellees in a California state court in August of 1998 ("California Action"). Simultaneously, Appellees moved for a preliminary injunction ("Injunction Motion") pending their request for permanent relief. Wongco opposed the Injunction Motion and cross-moved to dismiss the Macy's Complaint ("Dismissal Motion").

Following oral argument, the bankruptcy court issued a Memorandum Decision, dated July 14, 1999 ("Preliminary Injunction Decision"), and Order, dated August 11, 1999 ("Preliminary Injunction Order"). Among other things, the Preliminary Injunction Order issued by Bankruptcy Judge Burton R. Lifland granted the Injunction Motion and denied the Dismissal Motion as to the Third, Fourth, Fifth, and Section B of the Sixth Causes of Action (the "Enjoined Claims") in Wongco's California Action and denied the Injunction Motion and granted the Dismissal Motion as to the First, Second, and Section A of the Sixth Causes of Action (the "Unenjoined Claims"). Thus, the decision permitted Wongco to proceed with only the Unenjoined Claims in the California Action.

On April 14, 2000, Appellees sought to convert the preliminary injunction into a permanent one and moved for summary judgment of the sole count of the Macy's Complaint for declaratory and injunctive relief ("Summary Judgment Motion"). Wongco made a cross-motion for summary judgment in its own favor. After oral argument on the Summary Judgment Motion, Judge Lifland issued a Memorandum

Decision and Order, dated May 16, 2000 ("Summary Judgment Order"), granting Appellees' Summary Judgment Motion and permanently enjoining Wongco from pursuing the Enjoined Claims. Judge Lifland adopted the findings of fact and conclusions of law set forth in the Preliminary Injunction Decision and the Preliminary Injunction Order, which he incorporated and supplemented in the Summary Judgment Order. In light of his decision on Appellees' Summary Judgment Motion, Judge Lifland also denied Wongco's cross-motion.

Wongco now appeals, relying on the arguments raised before Judge Lifland. For the reasons set forth below, this court affirms the decision of the bankruptcy court to permanently enjoin Wongco from pursuing the Enjoined Claims.

## II. STANDARD OF REVIEW

 The standard by which this court is to review an order of the bankruptcy court is set forth in Rule 8013 of the Federal Rules of Bankruptcy Procedure:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Therefore, the court will accept the bankruptcy court's findings of fact unless they are clearly erroneous. *See In re Manville Forest Products Corp.*, 896 F.2d 1384, 1388 (2d Cir.1990). This court will review the bankruptcy court's legal conclusions *de novo*. *See id.*

## III. DISCUSSION

### A. FINDINGS OF FACT

The following findings of fact are unchallenged by Appellant on appeal, and the court finds no clear error in those findings rendered by Bankruptcy Judge Lifland in this case and set forth in the Preliminary Injunction Decision. Therefore, the court adopts the following findings of fact, some of which are found in that Preliminary Injunction Decision:

On July 5, 1945, Wongco's predecessor-in-interest entered into a thirty-five year lease (the "Lease") with Macy's as lessee, for real property located in California (the "Property"). On January 1, 1977, the Lease was renewed for a period of thirty-nine years ending December 21, 2015. Article Twelfth of the Lease requires the lessee to reimburse the lessor for property taxes based on a formula set forth in that Article.

In 1986, pursuant to a leveraged buy-out, R.H. Macy & Co., Inc. assigned the Lease to Macy's California, Inc. The assignment effected a reassessment of the Property (the "First Reassessment") for the tax years 1986 to 1993. A reassessment notice was issued to Wongco in August of 1994 and a notice of taxes due was sent in November of 1994. Wongco unsuccessfully challenged the assessment and eventually paid $2,676,232.96, plus an additional $742,728.06 in interest. Wongco paid one-half of the property tax on December 10, 1994, and the other one-half on April 10, 1994.

On January 27 and 31, 1992, Macy's and certain relevant affiliates filed Chapter 11 petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code"). On October 14, 1992, Bankruptcy Judge Lifland entered an Order Pursuant to Bankruptcy Rule 3003(c)(3) Fixing Bar Date for Filing Certain Proofs of Claim,

Etc. (the "General Claims Bar Order"), which fixed December 15, 1992, as the last date for the filing of proofs of claim evidencing pre-petition claims against the Debtors. Macy's served Wongco with a Notice of Entry of Bar Order Fixing the Last Day to File Proofs of Claim Against Debtors (the "General Claims Bar Notice") in conformance with the General Claims Bar Order. Wongco ultimately filed a proof of claim in the amount of $465,258.65 on November 2, 1994. That amount represents unpaid rent; Wongco did not file a proof of claim with respect to any of the Enjoined Claims. Thereafter, on May 21, 1993, Wongco filed an Amended Proof of Claim reducing the amount stated in its original proof of claim to $465,035,20.

On October 24, 1994, the bankruptcy court entered an order (the "Lease Procedures Order"), authorizing Macy's, all of Macy's relevant affiliates, and Federated, as plan co-proponents, to mail notices of assumption to any non-debtor party to an executory contract that was proposed to be assumed or assumed and assigned pursuant to a plan of reorganization. Wongco disputed, both before the bankruptcy court and before this court, whether Wongco actually received the notice of assumption sent by the Debtors to Wongco on October 19, 1994.

In the Confirmation Order, dated December 8, 1994, the bankruptcy court confirmed the Reorganization Plan. Pursuant to the Plan, the Debtors merged into Federated. The Confirmation Order "discharge[d] the Debtors from all Claims or other debts that arose before the Effective Date" of the Plan, except as provided elsewhere in the Plan. Confirmation Order, § III.G.1. The Confirmation Order also provides for a permanent injunction barring all persons from taking any action to enforce any claims or debts discharged or barred by the Plan, except as provided in the Plan. Confirmation Order, § III.G.2. Moreover, Article X.B of the Plan provides for a permanent injunction barring all persons from taking any action to enforce claims or debts discharged or barred by the Plan.

Federated's assumption of the Lease under the Plan effected a second assessment (the "Second Reassessment") for tax years 1994 to 1998. Wongco paid one-half of the assessment in December of 1998 and the remaining one-half of the payment came due in April of 1999.

On August 4, 1998, Wongco commenced the California Action seeking damages for (1) breach of contract based on the Debtors' failure to reimburse Wongco for the First Reassessment and the Second Reassessment (the "First Cause of Action"); (2) breach of contract for the Debtors' failure to reimburse Wongco for additional taxes based on the formula provided under Article Twelfth (the "Second Cause of Action"); (3) breach of the covenant of good faith and fair dealing (the "Third Cause of Action"), and (4) negligence (the "Fourth Cause of Action") for the Debtors' failure to file a Notice of Transfer with the proper California authority; (5) breach of contract for the Debtors' failure to obtain Wongco's consent in assigning the Lease to Macy's California, Inc. (the "Fifth Cause of Action"); and (6) a declaratory relief finding that (A) the Debtors are required to reimburse Wongco for property taxes as of 1986 and for future years and that (B) the Debtor's failure to obtain consent from Wongco prior to assignment was a breach of contract (the "Sixth Cause of Action").

## B. CONCLUSIONS OF LAW

In the Summary Judgment Order, Bankruptcy Judge Lifland issued a permanent injunction in favor of Macy's and against Wongco that enjoined Wongco from pursuing the Third, Fourth, Fifth

and Section B of the Sixth Causes of Action of Wongco's California Action. The bankruptcy court based the entry of the injunction on numerous grounds, including its findings that the Enjoined Claims are pre-petition claims barred and discharged by (1) the General Claims Bar Order and related Notice; (2) the Lease Procedures Order and related Notice; and (3) the discharge and injunctive provisions of the Debtors' Reorganization Plan, Confirmation Order, and Sections 524(a)(2) and 1141(d) of the Bankruptcy Code. The bankruptcy court also found that the Enjoined Claims were expressly released as part of a settlement between Macy's and Wongco memorialized in an amendment to the Lease executed on January 18, 1991. In keeping with those rulings, the bankruptcy court denied Wongco's cross-motion for summary judgment. Wongco appeals each of those rulings.

■ Before the court addresses the substantive arguments raised by Wongco on appeal, the court must address the evidentiary objection raised by Wongco to the Declaration of Megyn M. Kelly. Wongco argues that Macy's Summary Judgment Motion was not supported by any competent evidence because the sole evidentiary support for the motion was the Declaration of Megyn M. Kelly, one of Macy's lawyers. Notably, Wongco does not challenge the actual authenticity of the documents attached to the Declaration, but simply argues that Ms. Kelly herself could not properly authenticate the documents, which included orders of the bankruptcy court, a transcript of the preliminary injunction proceedings, a document Wongco itself attached to an affidavit in the record, and other items that can be pulled directly from the bankruptcy court's docket. On appeal, this court once again overrules Wongco's baseless evidentiary objection. The court affirms the decision of the bankruptcy court to overrule Wongco's evidentiary objection and finds that the bankruptcy court properly relied upon the Kelly Declaration and its attached exhibits.

With the exception of the evidentiary objection and arguments as to the General Release, which will be addressed below, each and every argument raised by Wongco on appeal is based upon the same flawed premise: that the Enjoined Claims should be allowed because they are based on post-petition obligations, not pre-petition claims. This court affirms the findings of the bankruptcy court that the Enjoined Claims are pre-petition claims. The court adopts those findings for the reasons stated in the Preliminary Injunction Decision, as incorporated into the Summary Judgment Order. *See* Preliminary Injunction Decision, at 8–11.

■ The determination of when a claim arises is governed by the Bankruptcy Code. *See In re Chateaugay Corp. (LTV Co. v. Shalala),* 53 F.3d 478, 496 (2d Cir. 1995). Section 101(5)(A) of the Bankruptcy Code specifically defines the word "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent,* matured, *unmatured,* disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A) (1994) (emphasis added). In explaining the intended definition of "claim" under the Bankruptcy Code, Congress stated that "[b]y this broadest possible definition of [claim] . . . all legal obligations of the debtor, *no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case." H.R.Rep. No. 95–595, at 309 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6266; S.Rep. No. 95–989, at 21 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5807 (emphasis added). Appellant is correct that the existence of a

valid bankruptcy claim depends on whether the claimant possessed a right to payment that arose before the filing of the petition. *See In re Chateaugay Corp.*, 53 F.3d at 496 (stating further that "[a] claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts"). However, a "creditor need not have a cause of action that is ripe for suit outside of bankruptcy in order for it to have a pre-petition claim for purposes of the [Bankruptcy] Code." *In re Caldor, Inc.—NY*, 240 B.R. 180, 192 (Bankr.S.D.N.Y.1999) (quoting *In re National Gypsum Co.*, 139 B.R. 397, 405 (N.D.Tex.1992)).

 A contingent claim within the meaning of section 101(5) is a debt that "does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy." *In re Mazzeo (Mazzeo v. United States)*, 131 F.3d 295, 303 (2d Cir.1997). A claim exists if, before the filing of the bankruptcy petition, "the relationship between the debtor and creditor contained all of the elements necessary to give rise to a legal obligation" under the relevant non-bankruptcy law. *In re Chateaugay Corp.*, 53 F.3d at 497 (quoting *In re National Gypsum Co.*, 139 B.R. 397, 405 (N.D.Tex.1992)). This court affirms the finding of the bankruptcy court that all of the elements of the Enjoined Claims were present on the date the Debtors filed the petition. The Lease was entered into in 1945, and the alleged acts and omissions—like the alleged failure to file a notice of the change of ownership (Third and Fourth Causes of Action) and assignment of the Lease without Wongco's consent (Fifth and Section B of the Sixth Causes of Action)—that give rise to the Enjoined Claims occurred on or about 1986. The fact that Wongco received the reassessment notice after the petition date does not alter this conclusion. Even assuming the veracity of the allegations in the complaint in the California Action, the only potential relevance of the reassessment to the Enjoined Claims is to fix the damages for which Appellees are purportedly liable. Therefore, the court finds that the Enjoined Claims are pre-petition claims for purposes of Section 101(5)(A).

 Since this court finds that the Enjoined Claims are pre-petition claims, this court also affirms and adopts the finding of the bankruptcy court that there are no genuine issues of material fact regarding Appellees' right to enjoin Wongco from pursuing the Enjoined Claims. Thus, this court affirms the decision of the bankruptcy court granting the Summary Judgment Motion, denying Wongco's cross-motion, and entering a permanent injunction in favor of Appellees.

The General Claims Bar Order and Notice required that all proofs of claim evidencing pre-petition claims, like the Enjoined Claims, be filed, if at all, on or prior to December 15, 1992. Since Wongco opted not to file the Enjoined Claims at that time, the court finds that Wongco is properly enjoined from doing so now. The Enjoined Claims are also barred by the discharge provisions of the Plan, the Confirmation Order, and the Bankruptcy Code. The Plan and Confirmation Order discharged the Debtors from all debts arising prior to the Plan's effective date; moreover, the Plan, Confirmation Order, and section 524(a)(2) of the Bankruptcy Code each provide for a permanent injunction forever enjoining the claims discharged by the Plan. Similarly, section 1141(d)(1) of the Bankruptcy Code discharged the Debtors from all debts arising prior to the confirmation of the Plan. Thus, the court affirms the findings of the bankruptcy court that the Enjoined Claims, as

pre-petition claims, are barred and have long since been discharged by: (1) the General Claims Bar Order and related Notice and (2) the discharge and injunctive provisions of the Reorganization Plan, Confirmation Order, and sections 524(a)(2) and 1141(d) of the Bankruptcy Code. The Debtors are entitled to summary judgment and permanent injunctive relief barring Wongco from proceeding on the Enjoined Claims.

In light of those findings, the court need not decide whether the Enjoined Claims are similarly barred by the Lease Procedures Order and Lease Procedures Notice or whether the Enjoined Claims were released as a part of the amendment of the Lease on January 18, 1991. Resolution of any issue with respect to service of the Lease Procedures Order or Lease Procedures Notice is unnecessary to this decision and irrelevant to the entry of the permanent injunction in this case. Similarly, in light of this court's findings concerning the pre-petition nature of the Enjoined Claims, this court need not reach the arguments raised by Wongco concerning the General Release in the 1991 amendment to the Lease.

## IV. CONCLUSION

For the foregoing reasons, this court affirms the order of the bankruptcy court, including the entry of the permanent injunction enjoining Wongco from pursuing the Third, Fourth, Fifth, and Section B of the Sixth Causes of Action in Wongco's California Action.

**SO ORDERED.**